<u>IN THE CHANCERY COURT FOR HAMBLEN COUNTY, TENNESSEE<br>AT MORRISTOWN</u>

PAUL J. TRIPUCKA, as insured under a      :
policy of insurance; and his spouse,      :
MELISSA A. TRIPUCKA, as a covered      :
dependent under said policy,      :
     :
        Plaintiffs,      :
     :
     :
v.      :    NO. 2013-CV-114
     :
     :
AMERICAN HERITAGE LIFE      :
INSURANCE COMPANY, d/b/a      :
Allstate,      :
     :
        Defendant.      :

FILED
CHANCERY COURT CLERK
MAR 28 2013
TIME 3:35
HAMBLEN COUNTY

## COMPLAINT

Come the Plaintiffs, by and through counsel, and bring suit against the Defendant, American Heritage Life Insurance Company, d/b/a Allstate, and for cause of action would state:

1. The Plaintiffs, Paul J. Tripucka (hereinafter "Mr. Tripucka") and Melissa A. Tripuka (hereinafter "Mrs. Tripucka"), are citizens and residents of Hamblen County, Tennessee.

2. The Defendant, American Heritage Life Insurance Company (hereinafter "Allstate"), is a foreign corporation authorized to do and doing business in the State of Tennessee, and which can be served through the Commissioner of Insurance for the state of Tennessee at the address 500 James Robertson Parkway, Nashville, Tennessee 37243-1131.

BREWER & TERRY, P. C.
ATTORNEYS AT LAW
1702 W. ANDREW
JOHNSON HIGHWAY
P. O. BOX 2046
MORRISTOWN, TENNESSEE
37816-2046

EXHIBIT 2

1

3. In November 2009, Mrs. Tripucka was diagnosed with Multiple Sclerosis ("MS").

4. Shortly after her diagnosis, Mr. Tripucka was offered a cancer and specified disease policy and provided assurances that his wife's, Mrs. Tripucka's, MS treatments would be covered under the Policy as a "specified disease." The parties thereby entered into a binding contract for the intended purpose that Mrs. Tripucka's MS treatments would be covered.

5. The referenced "binding contract" is incorporated herein by reference and is attached as Exhibit 1. Upon information and belief, Exhibit 1 is a true and exact copy of the Policy that was, and continues to be, in full force and effect at all material times to this Complaint.

6. On January 4, 2011, Mrs. Tripucka began receiving regular monthly Tysabri (natalizumab) injections for the treatment of her MS for which she made claims for benefits under the subject Policy.

7. Mrs. Tripucka continues to receive regular monthly injections of Tysabri as of the filing of this Complaint.

8. Upon information and belief, Mrs. Tripucka will need Tysabri and/or other similar treatments to modify her MS for the remainder of her life.

9. Tysabri treatments are covered under Section H of the Policy's schedule of benefits (hereinafter "Section H").

10. Section H pays benefits (up to a maximum of $10,000.00 annually) for cancer and "other specified disease" treatments. MS is a "specified disease" under the Policy.

11. Although assured that the Policy would cover MS treatments, the Defendant failed to pay benefits under the Policy for Mrs. Tripucka's Tysabri treatments. In the fall of 2011, the Plaintiff filed an appeal with the company.

BREWER & TERRY, P. C.
ATTORNEYS AT LAW
1702 W. ANDREW
JOHNSON HIGHWAY
P. O. BOX 2046
MORRISTOWN, TENNESSEE
37816-2046

2

12. The company denied the appeal on January 14, 2012, under the following language contained in Section H:

> "We only pay this benefit for cancer or specified disease treatment consisting of...cancericidal chemical substances for the purpose of modification or destruction of cancer or specified disease."

13. The Defendant, in its January 14, 2012, letter to the Plaintiffs, denied the claim for benefits, expressly stating that the "policy does provide a benefit for chemotherapy, radiation therapy and immunotherapy when used for the modification or destruction of cancerous tissue. However, the drug Tysabri is not being used to destroy or modify cancerous tissue."

14. The representation made by the Defendant that the Policy only covers treatments for the "modification or destruction of cancerous tissue" is dishonest and impossible. Under such a representation, there would be no coverage for any specified disease treatments under Section H of the Schedule of Benefits. That is to say, under no set of circumstances would the Policy ever cover MS treatments given the Defendant's representation of what the Policy covers.

15. The prescribing information for Tysabri states that the drug is indicated as a monotherapy for the treatment of patients with relapsing forms of multiple sclerosis to delay the accumulation of physical disability and to reduce the frequency of clinical exacerbations.

16. Tysabri modifies the symptoms of MS by delaying the accumulation of physical disability and reducing the frequency of clinical exacerbations.

17. The prescribing information for Tysabri (natalizumab) states that the drug is a monoclonal antibody.

18. Drugs made up of monoclonal antibodies are used to destroy cancer cells in the body. Monoclonal antibodies are thus cancericidal chemical substances.

BREWER & TERRY, P. C.
ATTORNEYS AT LAW
1702 W. ANDREW
JOHNSON HIGHWAY
P. O. BOX 2046
MORRISTOWN, TENNESSEE
37816-2046

3

19. Tysabri is a cancericidal chemical substance.

20. On November 19, 2012, the Plaintiff made a demand for payment of benefits owed under Section H and further demanded approval of all future Tysabri treatments. In the demand, the Plaintiff set forth all of the factual allegations set forth above.

21. The demand is attached as Exhibit 2 to this Complaint and is incorporated by reference. Exhibit 2 represents a true and exact copy of the demand sent to the Defendant.

22. The Defendant again denied coverage under the Policy by letter dated December 21, 2012, for the same reasons it denied coverage to Mrs. Tripucka in its January 14, 2012, correspondence.

23. The Plaintiffs have performed all of the conditions of the Policy to be performed on their part.

24. The Policy has, by its terms, become due and payable.

25. A formal demand for payment was made, and the Plaintiffs have waited over 60 days after making such formal demand before filing this present action.

26. The Defendant frivolously and unjustifiably refused to comply with the Plaintiffs' demand to pay according to the terms of the Policy, and, accordingly, its refusal to pay was not in good faith pursuant to T.C.A. § 56-7-105.

27. Based on the foregoing allegations, the Defendant owes the Plaintiffs $30,000.00 plus interest for benefits unpaid by the Defendant under the Policy.

28. The Defendant materially breached the Policy by failing, in bad faith, to honor the terms of the Policy. Specifically, the Defendant in bad faith failed to pay benefits for Tysabri treatments, though said treatments are covered under Section H. Accordingly, the Plaintiff is entitled to contract damages for the full value of the Policy to be determined at trial.

BREWER & TERRY, P. C.
ATTORNEYS AT LAW
1702 W. ANDREW
JOHNSON HIGHWAY
P. O. BOX 2046
MORRISTOWN, TENNESSEE
37816-2046

4

WHEREFORE, Plaintiffs pray for the following relief:

A. That they be awarded a judgment in the amount of $30,000.00 plus interest for past benefits owed under the Policy;

B. That they be awarded judgment in an amount to be determined at trial for the full value of the Policy, said value to be determined at trial based upon Mrs. Tripucka's life expectancy and the reasonable necessity of future Tysabri injections or other similar treatments otherwise covered under Section H of the Policy;

C. Alternatively, that Defendant be ordered to approve coverage for all future Tysabri injections or other similar treatments deemed reasonably necessary by Mrs. Tripucka's medical providers, provided all other conditions of the Policy have been met;

D. That Plaintiffs be awarded an additional 25 percent of the entire judgment based on the Defendant's bad faith refusal to pay pursuant to T.C.A. § 56-7-105;

E. That Defendant be taxed with court costs and discretionary costs; and

F. That Plaintiffs be awarded any such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED,

PAUL and MELISSA TRIPUCKA

By: _____
Steven W. Terry, Esq.
R. Dale Darby, Esq.
Attorneys for the Plaintiffs

BREWER & TERRY, P. C.
ATTORNEYS AT LAW
1702 W. ANDREW
JOHNSON HIGHWAY
P. O. BOX 2046
MORRISTOWN, TENNESSEE
37816-2046

5

OF COUNSEL:

BREWER & TERRY, P.C.
1702 W. Andrew Johnson Hwy.
Morristown, TN 37816-2046
(423) 587-2730
d.darby@brewerandterry.com

## COST BOND

I hereby acknowledge myself surety for all costs and taxes incurred in this case in accordance with T.C.A. § 20-12-120.

This the 28 day of March, 2013.

R. Dale Darby, Esq.

BREWER & TERRY, P. C.
ATTORNEYS AT LAW
1702 W. ANDREW
JOHNSON HIGHWAY
P. O. BOX 2046
MORRISTOWN, TENNESSEE
37816-2046

6

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 6 of 45   PageID #: 62



**Allstate.**

Workplace Division

**AMERICAN HERITAGE LIFE INSURANCE COMPANY**
HOME OFFICE:
1776 AMERICAN HERITAGE LIFE DRIVE
JACKSONVILLE, FLORIDA 32224-6688
(904) 992-1776
A STOCK COMPANY

FILED
CHANCERY COURT/CLER
MAR 28 2013
TIME 3:35
HAMBLEN COUNTY

## GROUP CANCER AND SPECIFIED DISEASE INSURANCE POLICY
### NON-PARTICIPATING

American Heritage Life Insurance Company (referred to as we, us, or our) will provide benefits under this policy. We make this promise subject to all of the provisions of this policy.

The policyholder should read this policy carefully and contact us promptly with any questions. This policy is delivered in and is governed by the laws of the governing jurisdiction and consists of:

1. all policy provisions and any amendments and/or attachments issued; and
2. employees' signed enrollment forms, applications and evidences of insurability; and
3. the employer's signed application.

This policy may be changed in whole or in part. Only an executive officer of ours can approve a change. The approval must be in writing and endorsed on or attached to this policy. No other person, including an agent, may change this policy or waive any part of it.

### NOTICE OF THIRTY (30) DAY RIGHT TO EXAMINE POLICY

You may, within 30 days after receipt of this policy, return it to us or to our agent. Upon such return of the policy, it will be void as of the effective date; any premium paid will be refunded.

THIS IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. THE EMPLOYER DOES NOT BECOME A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM BY PURCHASING THIS POLICY, AND IF THE EMPLOYER IS A NON-SUBSCRIBER, THE EMPLOYER LOSES THOSE BENEFITS WHICH WOULD OTHERWISE ACCRUE UNDER THE WORKERS' COMPENSATION LAWS. THE EMPLOYER MUST COMPLY WITH THE WORKERS' COMPENSATION LAW AS IT PERTAINS TO NON-SUBSCRIBERS AND THE REQUIRED NOTIFICATIONS THAT MUST BE FILED AND POSTED.

Signed for American Heritage Life at its Home Office in Jacksonville, Florida on the Policy Effective Date.

SECRETARY                                PRESIDENT

### THIS IS LIMITED BENEFIT CANCER AND SPECIFIED DISEASE COVERAGE WHICH ONLY PROVIDES BENEFITS FOR CANCER AND SPECIFIED DISEASES AS DEFINED OR OTHER OPTIONAL BENEFITS DESCRIBED HEREIN

GVCP2TX                                                        Page 1

EXHIBIT 1

# TABLE OF CONTENTS

POLICY SPECIFICATIONS
 ELIGIBLE CLASS(ES) ..................................................................3
 BENEFITS ......................................................................................3
 OPTIONAL BENEFIT(S) ...............................................................3
 INITIAL RATE ...............................................................................3
 RATE GUARANTEE DATE ...........................................................3
 PREMIUM DUE ..............................................................................3
 DIVISIONS, SUBSIDIARIES, AND AFFILIATES .....................3
 BENEFITS/AMOUNT ....................................................................3A

POLICYHOLDER PROVISIONS
 RATE GUARANTEE ......................................................................4
 PREMIUM INCREASES OR DECREASES .....................................4
 INFORMATION REQUIRED FROM THE POLICYHOLDER .........4
 CANCELING POLICY ....................................................................4

GENERAL PROVISIONS
 COST OF COVERAGE ...................................................................5
 CLASS(ES) OF EMPLOYEES ELIGIBLE FOR COVERAGE .........5
 ELIGIBILITY OF FAMILY MEMBERS .........................................5
 ELIGIBILITY DATE .......................................................................5
 WHEN AN ELIGIBLE EMPLOYEE CAN ENROLL OR DISCONTINUE COVERAGE ..........5
 WHEN EVIDENCE OF INSURABILITY IS REQUIRED ................6
 EFFECTIVE DATE OF COVERAGE .............................................6
 CERTIFICATE OF COVERAGE ....................................................6
 ABSENT FROM WORK ON DATE COVERAGE WOULD NORMALLY BEGIN ..........6
 TERMINATION OF COVERAGE ..................................................6
 AGENCY .........................................................................................6
 CONVERSION PRIVILEGE ...........................................................7
 GRACE PERIOD .............................................................................7
 ENTIRE CONTRACT .....................................................................7
 CONTESTABILITY .........................................................................7
 CLERICAL ERROR .........................................................................7
 LEGAL ACTION .............................................................................7

LIMITATIONS/EXCEPTIONS ...................................................................8

BENEFITS INFORMATION
 PAYMENT OF BENEFITS .............................................................9
 SCHEDULE OF BENEFITS ............................................................9-12
 OPTIONAL BENEFIT(S) ...............................................................13A
 SCHEDULE OF SURGICAL PROCEDURES ..................................14-16

CONTINUITY OF COVERAGE .................................................................17

CLAIMS INFORMATION
 NOTICE OF CLAIM .......................................................................18
 FILING A CLAIM ...........................................................................18
 PROOF OF CLAIM .........................................................................18
 PHYSICAL EXAMINATION AND AUTOPSY ..............................18
 PAYMENT OF CLAIMS .................................................................18
 ASSIGNMENT ................................................................................18
 OVERPAID CLAIM ........................................................................18
 CLAIM REVIEW ............................................................................19
 APPEALS PROCEDURE ................................................................19

GLOSSARY .................................................................................................20-22

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 8 of 45   PageID #: 64

# CANCER AND SPECIFIED DISEASE PLAN
## POLICY SPECIFICATIONS

| | |
|---|---|
| POLICYHOLDER: | Builders FirstSource, Inc. |
| POLICY NUMBER: | Group 86460, 86461, 86462, 86463, 86464, 86465, 86466, 86467, 86468, 86470 |
| POLICY EFFECTIVE DATE: | January 1, 2005 |
| POLICY ANNIVERSARY DATE: | January 1, 2006 |
| GOVERNING JURISDICTION: | the state of Texas and subject to the laws of that jurisdiction |

**ELIGIBLE CLASS(ES):** All full-time active employees working at least 30 hours per week

**WAITING PERIOD:** 6 Months

**BENEFITS:** See page 3A

**OPTIONAL BENEFIT(S):** Cancer Screening: $100.00/year

**INITIAL RATE:** Monthly rate of $18.00 per employee for individual coverage or $29.92 per employee for family coverage.

**RATE GUARANTEE DATE:** 01/01/2006

## PREMIUM DUE

Premium Due Dates: The initial date agreed to between American Heritage Life Insurance Company and the Policyholder and each specified date thereafter.

The policyholder must send all premiums on or before the premium due date to us. The premium must be paid in United States dollars.

Premium payments are required while the employee is receiving benefits except as provided in the Waiver of Premium benefit.

## DIVISIONS, SUBSIDIARIES OR AFFILIATED COMPANIES

These are the Policyholder's divisions, subsidiaries, or affiliates listed below. The policyholder may act for and on behalf of any and all of these in all matters that pertain to this plan. Every act done by, agreement made with, or notice given to the policyholder will be binding on them.

| Name | Location (City And State) |
|---|---|

None

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 9 of 45   PageID #: 65

CANCER POLICY – GVCP2
SEE BENEFITS SECTION OF POLICY FOR DETAILS OF BENEFITS

| BENEFITS | AMOUNT |
|---|---|
| A. CONTINUOUS HOSPITAL CONFINEMENT<br>DAYS 1-70 | $300.00/DAY |
| B. EXTENDED BENEFITS<br>DAYS 70+ | UP TO $300.00/DAY |
| C. GOVERNMENT/CHARITY HOSPITAL | $300.00/DAY |
| D. PRIVATE DUTY NURSING SERVICES | UP TO $300.00/DAY |
| E. EXTENDED CARE FACILITY | UP TO $300.00/DAY |
| F. AT HOME NURSING | UP TO $300.00/DAY |
| G. HOSPICE CARE<br>1. FREESTANDING HOSPICE CARE CENTER<br>2. HOSPICE CARE TEAM | <br>UP TO $300.00/DAY<br>UP TO $300.00/VISIT |
| H. RADIATION/CHEMOTHERAPY | UP TO $10,000.00/12 MONTHS |
| I. BLOOD, PLASMA AND PLATELETS | UP TO $10,000.00/12 MONTHS |
| J. SURGERY | UP TO $1,500.00 PER UNIT OF COVERAGE<br>SEE SCHEDULE OF SURGICAL PROCEDURES<br>1 UNIT OF COVERAGE |
| K. ANESTHESIA | UP TO 25% OF SURGERY BENEFIT |
| L. BONE MARROW OR STEM CELL TRANSPLANT<br>1. AUTOLOGOUS TRANSPLANT<br>2. NON-AUTOLOGOUS TRANSPLANT<br>3. NON-AUTOLOGOUS TRANSPLANT FOR THE<br>TREATMENT OF LEUKEMIA | <br>UP TO $500.00/12 MONTHS<br>UP TO $1,250.00/12 MONTHS<br><br>UP TO $2,500.00/12 MONTHS |
| M. AMBULATORY SURGICAL CENTER | UP TO $250.00/DAY |
| N. SECOND SURGICAL OPINION | UP TO $200.00 |
| O. INPATIENT DRUGS AND MEDICINE | UP TO $25.00/DAY |
| P. PHYSICIAN'S ATTENDANCE | UP TO $50.00/DAY |
| Q. AMBULANCE | UP TO $100.00/CONFINEMENT |
| R. NON-LOCAL TRANSPORTATION | COACH FARE OR $0.40/MILE |
| S. OUTPATIENT LODGING | UP TO $50.00/DAY<br>UP TO $2,000.00/12 MONTHS |
| T. FAMILY MEMBER LODGING<br>AND TRANSPORTATION | UP TO $50.00/DAY<br>COACH FARE OR $0.40/MILE |
| U. PHYSICAL OR SPEECH THERAPY | UP TO $50.00/DAY |
| V. NEW OR EXPERIMENTAL TREATMENT | UP TO $5,000.00/12 MONTHS |
| W. PROSTHESIS | UP TO $2,000.00/AMPUTATION |
| X. COMFORT/ANTI-NAUSEA | UP TO $200.00/YEAR |
| Y. WAIVER OF PREMIUM | AFTER 90 DAYS |

GVCP2TX

Page 3A

# POLICYHOLDER PROVISIONS

## RATE GUARANTEE

A change in premium rate will not take effect before the rate guarantee date shown on page 3. However, we may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1. a change occurs in this plan design; or
2. a division, subsidiary, or affiliated company is added or deleted; or
3. the number of insureds changes by 25% or more; or
4. a new law or a change in any existing law is enacted which applies to this plan; or
5. less than 25% of those eligible for coverage are participating.

We will notify the policyholder in writing at least 60 days before a premium rate is changed. A change may take effect on an earlier date when both we and the policyholder agree in writing. Rates are guaranteed for 12 months after a premium revision.

## PREMIUM INCREASES OR DECREASES

Premium increases or decreases which take effect during a policy month are adjusted and due on the next premium due date following the change. Changes will not be pro-rated daily.

If premiums are paid on other than a monthly basis, premiums for increases and decreases will result in a monthly pro-rated adjustment on the next premium due date.

## INFORMATION REQUIRED FROM THE POLICYHOLDER

The policyholder must provide us with the following on a regular basis:

1. information about employees:
    a. who are eligible to become insured; and
    b. whose coverage changes; and
    c. whose coverage ends; and
2. any information that may be required to manage a claim; and
3. any other information that may be reasonably required.

Policyholder records that have a bearing, in our opinion, on this policy will be available for review by us at any reasonable time.

## CANCELING POLICY

This policy can be canceled:

1. by us; or
2. by the policyholder.

We may cancel or offer to modify this policy, with at least 60 days written notice to the policyholder, if:

1. less than 25% of those eligible for coverage are participating; or
2. this policy has been in effect more than 12 months; or
3. the policyholder does not promptly provide us with information that is reasonably required; or
4. the policyholder fails to perform any of its obligations that relate to this policy; or
5. fewer than 10 employees are insured.

If the premium is not paid during the grace period, the policy will terminate automatically at the end of the grace period. The policyholder is liable for the premium for coverage during the grace period. The policyholder must pay us all premiums due for the full period each plan is in force.

The policyholder may cancel this policy by written notice delivered to us at least 31 days prior to the cancellation date. When both the policyholder and we agree, this policy or a plan can be canceled on an earlier date. If we or the policyholder cancels this policy, coverage will end at 12:00 midnight on the last day of coverage.

Cancellation of coverage by us is without prejudice to any continuous loss that commences while this policy was in force.

# GENERAL PROVISIONS

## COST OF COVERAGE

The employee pays the cost of coverage.

## CLASS(ES) OF EMPLOYEES/ELIGIBILITY FOR COVERAGE

The class(es) of employees eligible for coverage are shown on page 3.

## ELIGIBILITY OF FAMILY MEMBERS

Family members eligible to be covered persons are:
1. the employee; and
2. the employee's spouse on the employee's effective date; and
3. unmarried children of the employee or the employee's spouse, including adopted children, children during pendency of adoption procedures, dependent grandchildren living in the Insured's household and stepchildren, who are under 22 years old, or under 26 years old and full-time students at an educational institution of higher learning beyond high school.

A child born to the employee or covered spouse, while this policy is in force as a family policy, will be a covered person. This coverage begins at the moment of birth of such child for benefits otherwise payable to a covered person under this policy. Any person who becomes a family member after the effective date (except newborns) must be added by endorsement. No additional premium will be required for newborns or family members added by endorsement if this policy is in force as a family policy.

Under individual coverage, newborn children are automatically covered from the moment of birth for a period of 31 days. If the employee desires uninterrupted coverage for the newborn child (children), the employee must notify us within 31 days of the child's birth. Upon notification, we will convert the employee's coverage to family coverage and provide notification of the additional premium due. If the employee does not notify us within 31 days of the birth of the child, the temporary automatic coverage ends. If the employee has individual coverage and the employee marries and desires coverage for his or her spouse, the employee must notify us of the marriage within 31 days of the marriage and we will convert the coverage to family coverage and provide notification of the additional premium due.

The provisions of this section also apply to adopted children and children during pendency of adoption proceedings as follows:
1. Coverage is retroactive from the moment of birth for a child with respect to whom a decree of adoption by the employee has been entered within 31 days after the date of birth.
2. If adoption proceedings have been instituted by the employee within 31 days after the date of birth and the employee has temporary custody, coverage must be provided from the moment of birth.
3. For children other than newborns, if adoption proceedings have been completed, and a decree of adoption was entered within 1 year from the institution of the proceedings, coverage will begin upon temporary custody for 1 year, unless extended by the order of the court by reasons of the special needs of the child.

Coverage must be provided as long as the employee has custody of the child pursuant to decree of the court and required premiums are paid.

## ELIGIBILITY DATE

If the employee is working for the employer in an eligible class, the date such employee is eligible for coverage is the later of:
1. the policy effective date; or
2. the date such employee becomes a member of the eligible class.

## WHEN AN ELIGIBLE EMPLOYEE CAN ENROLL OR DISCONTINUE COVERAGE

1. The employee may apply for coverage during:
   a. his or her initial enrollment period; or
   b. at any other time, subject to evidence of insurability.
2. The employee may discontinue coverage at any time.

## GENERAL PROVISIONS (CONT)

**WHEN EVIDENCE OF INSURABILITY IS REQUIRED**

Evidence of insurability is required if the employee:
1. voluntarily canceled coverage and is reapplying; or
2. is applying for the coverage at any time after his or her initial enrollment period.

**EFFECTIVE DATE OF COVERAGE**

Coverage for each eligible employee is effective on the effective date shown on each certificate of insurance.

For any change in an employee's coverage that is subject to evidence of insurability, the change in coverage is effective on the date we approve such change in coverage.

For any change in coverage that is not subject to evidence of insurability, the change in coverage is effective on the date we receive such request for change in coverage.

**CERTIFICATE OF COVERAGE**

We will issue certificates of coverage to the policyholder for delivery to each employee. The certificate will provide a description of the coverage provided by this policy and will state:
1. the benefits provided under the group policy; and
2. to whom benefits are payable; and
3. the limitations, exclusions and requirements that apply to coverage under the policy.

If there is any discrepancy between the provisions of any certificate and the provisions of this policy, the provisions of this policy govern.

**ABSENT FROM WORK ON THE DATE COVERAGE WOULD NORMALLY BEGIN**

If the employee is absent from work due to injury, sickness, temporary layoff or leave of absence, coverage for that employee begins on the date he or she returns to active employment. This applies to an employee's initial coverage, as well as any increase or addition to coverage that occurs after such employee's initial coverage is effective.

**TERMINATION OF COVERAGE**

The employee's coverage under the policy ends on the earliest of:
1. the date the policy is canceled; or
2. the last day of the period for which such employee made any required contributions; or
3. the last day such employee is in active employment; or
4. the date such employee is no longer in an eligible class; or
5. the date such employee's class is no longer eligible.

We will provide coverage for a payable claim that occurs while the employee is covered under the policy.

If the employee's spouse is a covered person, the spouse's coverage ends upon valid decree of divorce or death of the covered employee.

If the employee's child is a covered person, the child's coverage ends on the policy anniversary next following the date the child is no longer eligible. This is the earlier of: (a) when the child marries; or (b) reaches age 22 (26 if a full-time student attending an educational institution of higher learning beyond high school). Coverage does not terminate on an unmarried child who:
1. is incapable of self-sustaining employment by reason of mental or physical incapacity; and
2. became so incapacitated prior to the attainment of the limiting age of eligibility under this policy; and
3. is chiefly dependent upon the employee for support and maintenance.

Dependent coverage continues as long as this policy remains in force and the dependent remains in such condition.

Proof of the incapacity and dependency of the child must be furnished within 60 days of the child's attainment of the limiting age of eligibility. Thereafter, such proof must be furnished as frequently as may be required, but no more frequently than annually after the child's attainment of the limiting age for eligibility.

If we accept a premium for coverage extending beyond the date, age or event specified for termination as to a covered person, then coverage continues during the period for which such premium was accepted. This does not apply where such acceptance was based on a misstatement of age.

**AGENCY**

For purposes of the policy, the policyholder acts on its own behalf or as the employee's agent. Under no circumstances will the policyholder be deemed our agent.

GVCP2TX

## GENERAL PROVISIONS (CONT)

**CONVERSION PRIVILEGE**

If the coverage of a covered employee terminates for reasons other than non-payment of premium, or if coverage of a spouse covered under this policy terminates due to divorce or death of the covered employee, or if coverage of a covered child terminates due to the child becoming married or reaching age 22 (26 if a full-time student), such covered person can obtain a policy of insurance (called the converted policy), without evidence of insurability. Obtaining that policy is subject to the following conditions:

1. Application for the converted policy must be made to us within 31 days (within 60 days of final divorce decree in case of divorce) after the coverage terminates. The effective date of the converted policy will be the date on which coverage under this policy terminates.
2. The converted policy premium is at the rate for the class of risk at the applicant's age for insurance provided as of the date of the conversion.
3. Any conditions excluded in this policy are excluded in the converted policy. No other pre-existing conditions are excluded. The Pre-Existing Condition Limitation and Contestability provisions are waived to the extent that such periods have been met under this policy. Benefits payable to the applicant under the converted policy are reduced by benefits payable under this policy.
4. The converted policy will be a similar policy or a policy providing lesser benefits at the applicant's option.

When conversion is due to divorce, other dependents covered under this policy may be covered under such new policy or under this policy as the employee and his former spouse may elect. They may not be covered under both policies.

If either this policy or a new policy is in force on the employee or his former spouse, and either of them re-marry, such new spouse may be covered under the appropriate policy. We must be advised of the re-marriage by the completion of a new application for such new spouse. This new application is subject to our approval. The employee or his former spouse must pay the premiums appropriate to such new policy in order to have it issued and maintained in force.

**GRACE PERIOD**

The policyholder is entitled to a grace period of 31 days for the payment of any premium due except for the first premium. The policy continues in force during the grace period, unless the policyholder gives us written notice of discontinuance in advance of the date of discontinuance and in accordance with the terms of this policy. The policyholder is liable to us for the payment of any pro rata premium for the time the policy is in force during a grace period.

**ENTIRE CONTRACT**

The contract consists of the following items:

1. the group policy; and
2. any amendments and endorsements; and
3. the applications and other written statements of the policyholder; and
4. the individual applications, enrollment forms, and evidences of insurability of the covered persons.

Any statements made by the policyholder or by a covered person, in the absence of fraud, are representations and not warranties. Only written statements signed by the policyholder or the covered person will be used in defense of a claim. A copy of any written statement, if applicable, will be furnished to the policyholder or the covered person or his beneficiary, if any, if a claim is denied based upon such a statement.

**CONTESTABILITY**

After 2 years from the effective date of this policy, no misstatement of the policyholder, made in any applications, can be used to void the policy. After 2 years from the effective date of any covered person's coverage no misstatement of a covered person, made in writing, can be used to void coverage or deny a claim for loss incurred.

**CLERICAL ERROR**

Clerical error on the part of the policyholder or us will not invalidate insurance otherwise in force nor continue insurance otherwise terminated. Upon discovery of any error, an adjustment will be made in the premiums. Complete proof must be supplied by the policyholder documenting any clerical errors.

**LEGAL ACTION**

No legal action may be brought to obtain benefits under the policy:

1. for at least 60 days after proof of loss has been furnished; or
2. after the expiration of 6 years from the time written proof of loss is required to have been furnished.

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 14 of 45   PageID #: 70

# LIMITATIONS / EXCEPTIONS

## A. PRE-EXISTING CONDITION LIMITATION

We do not pay for any loss due to a pre-existing condition as defined during the 12 month period beginning on the date that person became a covered person.

## B. OTHER LIMITATIONS AND EXCEPTIONS

We do not pay for any loss except for losses due directly from cancer or a specified disease and any other conditions or diseases caused or aggravated by cancer or a specified disease. Diagnosis must be submitted to support each claim.

**(This space intentionally left blank.)**

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 15 of 45   PageID #: 71

# BENEFITS INFORMATION

## PAYMENT OF BENEFITS

If cancer or a specified disease is diagnosed on or after the covered person's effective date, we pay according to the benefits provisions in this policy, subject to the Limitations/Exceptions provision and all other provisions contained in this policy.

If cancer or a specified disease is diagnosed while the covered person is hospital confined, benefits begin retroactively to the day of admission or 10 days prior to the date of diagnosis if this is more favorable.

If positive diagnosis is made for cancer or a specified disease within 12 months after a tentative diagnosis, benefits are paid from the date of tentative diagnosis if the tentative diagnosis is made on or after the effective date, subject to the Pre-existing Condition Limitation provision.

If a covered person dies while an inpatient in a hospital and cancer or a specified disease is not diagnosed until after the covered person's death, benefits will begin retroactively to the day of admission, up to a maximum of 30 days prior to death.

## SCHEDULE OF BENEFITS

We pay the following benefits for the necessary treatment of cancer or a specified disease, and for any other condition directly caused or aggravated by the cancer or specified disease. Treatment must be received in the United States or its territories.

For those benefits for which we pay actual charges up to a specified maximum amount, except benefits H., I., L., V. and W., if specific charges are not obtainable as proof of loss, we will pay 50% of the applicable maximum for the benefits payable.

No benefits are payable for the treatment of cancer or a specified disease except those expressly stated in this Schedule of Benefits.

A. **Continuous Hospital Confinement.** If a covered person is admitted to and confined as an inpatient in a hospital for the treatment of cancer or specified disease, we pay the amount shown on page 3A per day for each day. The maximum number of days payable is 70 days for each period of continuous hospital confinement.

B. **Extended Benefits.** If a covered person is confined in a hospital for the treatment of cancer or a specified disease for more than 70 days of continuous hospital confinement, we pay actual charges up to the amount shown on page 3A per day for: hospital room and board; medicine; laboratory tests; and other hospital charges. This benefit begins on the 71st day of continuous hospital confinement. This benefit is payable in lieu of all other benefits payable during the continuous hospital confinement beginning on the 71st day under the Schedule of Benefits (except the Waiver of Premium Benefit). This benefit continues as long as the covered person is continuously hospital confined.

C. **Government or Charity Hospital.** In lieu of all other benefits in this policy (except the Waiver of Premium Benefit), we pay the amount shown on page 3A per day for each day a covered person is confined to: 1.) a hospital operated by or for the U.S. Government (including the Veteran's Administration); or 2.) a hospital that does not charge for the services it provides (charity). The confinement must be for the treatment of cancer or specified disease.

D. **Private Duty Nursing Services.** While a covered person is an inpatient receiving cancer or specified disease treatment, we pay the actual charges, up to the amount shown on page 3A per day if such covered person requires the full-time services of a private nurse. Full-time means at least 8 hours of attendance during a 24 hour period. These services must be required and authorized by a physician for cancer or specified disease treatment and must be provided by a nurse.

E. **Extended Care Facility.** We pay actual charges up to the amount shown on page 3A per day for each day a covered person is confined in an extended care facility for the treatment of cancer or specified disease. Confinement in the extended care facility must be at the direction of the attending physician and must begin within 14 days after a covered hospital confinement. This benefit is limited to the number of days of the previous continuous hospital confinement.

F. **At Home Nursing.** While a covered person is receiving treatment for cancer or specified disease, we pay actual charges up to the amount shown on page 3A per day for private nursing care and attendance by a nurse at home. At home nursing services must be required and authorized by the attending physician and must begin within 14 days after a covered confinement as an inpatient in a hospital. This benefit is limited to the number of days of the previous continuous hospital confinement.

# BENEFITS INFORMATION (CONT)

G.  Hospice Care. When a covered person is:
1.  diagnosed with cancer or a specified disease; and
2.  determined by a physician to be terminally ill as a result of cancer or a specified disease; and
3.  expected to live 6 months or less;
we pay one of the following two benefits for hospice care:

(1)  *Freestanding Hospice Care Center.* We pay actual charges up to the amount shown on page 3A per day for confinement in a licensed freestanding hospice care center. The covered person must be diagnosed by a physician as terminally ill and the attending physician must approve the confinement. This benefit is payable only if a covered person is admitted to a freestanding hospice care center within 14 days after a period of inpatient hospital confinement. Benefits payable for hospice centers that are designated areas of hospitals will be paid the same as inpatient hospital confinement; or

(2)  *Hospice Care Team.* We pay actual charges up to the amount shown on page 3A per visit, limited to 1 visit per day, for home care services by a hospice care team. Home care services are hospice services provided in the patient's home. This benefit is payable only if: the covered person has been diagnosed as terminally ill; and the attending physician has approved such services; and home care services begin within 14 days after a period of hospital confinement. We do not pay for: food services or meals other than dietary counseling; or services related to well-baby care; or services provided by volunteers; or support for the family after the death of the covered person.

H.  Radiation/Chemotherapy. We pay actual charges, up to the limit stated below for radiation therapy and chemotherapy received by a covered person as part of treatment for cancer or a specified disease.

This benefit is limited to the amount shown on page 3A per 12 month period beginning with the first day of benefit under this provision. Administration of radiation therapy or chemotherapy other than by medical personnel in a physician's office or hospital, including medications dispensed by a pump, will be limited to the costs of the drugs only, subject to the maximum amount payable per 12 month period explained above.

We only pay this benefit for cancer or specified disease treatment consisting of:
1.  cancericidal chemical substances for the purpose of modification or destruction of cancer or a specified disease; and
2.  X-ray radiation; and
3.  radium and cesium implants; and
4.  cobalt.

This benefit does not pay for: treatment planning; or treatment consultation; or treatment management; or the design and construction of treatment devices; or basic radiation dosimetry calculation; or any type of laboratory tests; or X-ray or other imaging used for diagnosis or disease monitoring; or the diagnostic tests related to these treatments. This benefit also does not pay for any devices or supplies including intravenous solutions and needles related to these treatments.

I.  Blood, Plasma and Platelets. We pay actual charges, up to the limit stated below, for:
1.  blood, plasma and platelets (including transfusions and administration charges); and
2.  processing and procurement costs; and
3.  cross-matching;
received by a covered person in conjunction with cancer or specified disease treatment. This benefit is limited to the amount shown on page 3A per 12 month period beginning with the first day of benefit under this provision. We do not pay for blood replaced by donors.

GVCP2TX

# BENEFITS INFORMATION (CONT)

J.  **Surgery.** When surgery is performed on a covered person:
1.  for the purpose of treating a diagnosed cancer or specified disease; or
2.  for the purpose of diagnosing cancer or specified disease and that surgery results in a diagnosis of cancer or specified disease; or
3.  that is the first surgery performed subsequent to a diagnosis of cancer or specified disease that is performed for the purpose of verifying the complete removal of the cancer or specified disease.

We pay the actual charges, up to the amount listed in the Schedule of Surgical Procedures for the specific procedure per unit of coverage shown on page 3A. If any surgical procedure for the treatment or diagnosis of a cancer or specified disease other than those listed in the Schedule of Surgical Procedures is performed, we pay the actual charges, up to the unit value for the surgical procedure as set forth in the 1964 California Relative Value Schedule (C.R.V.S.) multiplied by $10.00 per unit of coverage. If the surgical procedure has no unit value or is not shown in the 1964 C.R.V.S., we pay the actual charges, up to an amount we reasonably determine to be consistent (based upon relative difficulty) with the Schedule of Surgical Procedures per unit of coverage. Two or more procedures performed at the same time through one incision or entry point are considered one operation; we pay the amount for the procedure with the greatest benefit. Payment will never exceed the maximum per unit of coverage. Surgery performed on an outpatient basis is paid at 150% of the scheduled benefit. This benefit does not pay for surgeries covered by other benefits in this Schedule of Benefits.

K.  **Anesthesia.** We pay actual charges of an anesthetist not to exceed 25% of the amount paid for the Surgery Benefit (benefit J.) for anesthesia received.

L.  **Bone Marrow or Stem Cell Transplant.** We pay the amounts shown on page 3A for the following types of bone marrow or stem cell transplants performed on a covered person for cancer or specified disease treatment:
1.  A transplant which is other than non-autologous.
2.  A transplant which is non-autologous for the treatment of cancer or specified disease other than Leukemia.
3.  A transplant which is non-autologous for the treatment of Leukemia.

This benefit is payable only once per covered person per calendar year.

A non-autologous transplant is an allogeneic or syngeneic graft from one human being to another.

M.  **Ambulatory Surgical Center.** We pay the actual charges for the use of an ambulatory surgical center, up to the amount shown on page 3A for a surgical procedure covered under the Surgery Benefit (benefit J.) that is performed at an ambulatory surgical center.

N.  **Second Surgical Opinion.** If surgery is recommended by a physician due to the diagnosis of cancer or specified disease and the covered person chooses to obtain the opinion of a second physician, we pay the actual charges for the second opinion, up to the amount shown on page 3A. This second opinion must be: rendered prior to surgery being performed; and obtained from a physician not in practice with the physician rendering the original recommendation.

O.  **Inpatient Drugs and Medicine.** We pay actual charges made by the hospital for drugs and medicine, related to cancer or specified disease treatment, while hospital confined up to the amount shown on page 3A per day, for each day of continuous hospital confinement. This benefit does not pay for drugs and/or medicine covered under the Radiation/Chemotherapy Benefit (benefit H).

P.  **Physician's Attendance.** We pay actual charges for a visit by a physician while a covered person is receiving cancer or specified disease treatment during hospital confinement up to the amount shown on page 3A per day. This benefit is limited to one visit by one physician per day of hospital confinement. A visit means personal attendance by the physician. Admission to the hospital as an inpatient is required.

Q.  **Ambulance.** We pay actual charges up to the amount shown on page 3A per continuous hospital confinement for transportation by a licensed ambulance service or a hospital owned ambulance to or from a hospital in which the covered person is confined for cancer or specified disease treatment.

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 18 of 45   PageID #: 74

# BENEFITS INFORMATION (CONT)

R. **Non-Local Transportation.** We pay the following benefit for cancer or specified disease treatment at a hospital (inpatient or outpatient); or radiation therapy center; or chemotherapy or oncology clinic; or any other specialized freestanding treatment center nearest to the covered person's home, provided the same or similar treatment cannot be obtained locally: 1.) actual cost of round trip coach fare on a common carrier; or 2.) the amount shown on page 3A, up to 700 miles, for round trip personal vehicle transportation. Mileage is measured from the covered person's home to the nearest treatment facility as described above. "Non-Local" means a round trip of more than 70 miles from the covered person's home to the nearest treatment facility. We do not pay for: transportation for someone to accompany or visit the person receiving treatment; visits to a physician's office or clinic; or for services other than actual treatment.

S. **Outpatient Lodging.** We pay a daily lodging benefit when a covered person receives radiation or chemotherapy treatment for cancer or specified disease (benefit H.) on an outpatient basis, provided the specific treatment is authorized by the attending physician and cannot be obtained locally. The benefit is the actual cost of a single room in a motel, hotel, or other accommodations acceptable to us, up to the amount shown on page 3A per day during treatment. This benefit is limited to the amount shown on page 3A per 12 month period beginning with the first day of benefit under this provision. Outpatient treatment must be received at a treatment facility more than 100 miles from the covered person's home.

T. **Family Member Lodging and Transportation.** We pay the following benefits for one adult member of the covered person's family to be near the covered person, when a covered person is confined in a non-local hospital for specialized treatment for cancer or specified disease:
1. *Lodging* - The actual cost of a single room in a motel, hotel, or other accommodations acceptable to us, up to the amount shown on page 3A per day. This benefit is limited to 60 days for each period of continuous hospital confinement.
2. *Transportation* - The actual cost of round trip coach fare on a common carrier or a personal vehicle allowance of the amount shown on page 3A per mile, up to 700 miles per continuous hospital confinement. Mileage is measured from the visiting family member's home to the hospital where the covered person is confined. We do not pay the Family Member Transportation Benefit if the personal vehicle transportation benefit is paid under the Non-Local Transportation Benefit (benefit R.), when the family member lives in the same city or town as the covered person.

U. **Physical or Speech Therapy.** We pay actual charges up to the amount shown on page 3A per day, for physical or speech therapy for restoration of normal body function.

V. **New or Experimental Treatment.** We pay actual charges, up to the limit stated below, for new or experimental treatment for cancer or specified disease when:
1. the treatment is judged necessary by the attending physician; and
2. no other generally accepted treatment produces superior results in the opinion of the attending physician.

This benefit is limited to the amount shown on page 3A per 12 month period beginning with the first day of treatment under this provision. This benefit does not pay if benefits are payable for treatment covered under any other benefit in this Schedule of Benefits.

W. **Prosthesis.** We pay actual charges up to the amount shown on page 3A for prosthetic devices which are prescribed as a direct result of surgery for cancer or specified disease treatment and which require surgical implantation. This benefit is limited to the amount shown on page 3A per covered person, per amputation.

X. **Comfort/Anti-Nausea Benefit.** We pay the actual charges, up to the amount shown on page 3A per calendar year for anti-nausea medication prescribed for a covered person by a physician in conjunction with cancer or specified disease treatment. We will not pay this benefit for medication administered while the covered person is an inpatient.

Y. **Waiver of Premium.** If, while this coverage is in force, the employee becomes disabled due to cancer first diagnosed after the effective date of coverage and remains disabled for 90 days, we pay premiums due after such 90 days for as long as the employee remains disabled. The term "disabled" means that the employee is:
1. unable to work at any job for which the employee is qualified by education, training or experience; and
2. not working at any job for pay or benefits; and
3. under the care of a physician for the treatment of cancer.

GVCP2TX

## OPTIONAL BENEFIT(S)

**Cancer Screening.** We pay this benefit if a covered person has a cancer screening test performed. We pay the amount shown on page 3 per calendar year per covered person for any one of the cancer screening tests. Each covered person is covered for no more than the amount shown on page 3 per calendar year. We pay this benefit regardless of the result of the test. There is no limit as to the number of years we pay for cancer screening tests. The eligible cancer screening tests are:

1. Bone marrow testing; and
2. CA15-3 (cancer antigen 15-3-blood test for breast cancer); and
3. CA125 (cancer antigen 125 – blood test for ovarian cancer); and
4. CEA (carcinoembryonic antigen – blood test for colon cancer); and
5. Chest X-ray; and
6. Colonoscopy; and
7. Flexible sigmoidoscopy; and
8. Hemocult stool analysis; and
9. Mammography; and
10. Pap Smear; and
11. PSA (prostate specific antigen – blood test for prostate cancer); and
12. Serum Protein Electrophoresis (test for myeloma).

**(This space intentionally left blank.)**

## SCHEDULE OF SURGICAL PROCEDURES

| SURGICAL PROCEDURE | PROCEDURE CODE FOR 1964 C.R.V.S | PER UNIT OF SURGERY COVERAGE |
|---|---|---|

**BRAIN**

Craniectomy, trephination, bone flap craniotomy;
for excision of brain tumor, supratentorial,
except meningioma..................................................61510 ....................................$1,250.00
Craniectomy, trephination, bone flap craniotomy;
for excision of meningioma, supratentorial ..................61512 ....................................$1,500.00
Transoral approach to skull base, brain stem or
upper spinal cord for biopsy, decompression or
excision of lesion.....................................................61575 ....................................$1,250.00
Stereotactic biopsy, aspiration, or excision, including
burr hole(s), for intracranial lesion; with
computerized axial tomography.................................61751 ....................................$1,400.00

**BREAST**

Biopsy of breast; needle core (separate procedure) ............19100 ....................................$   25.00
Biopsy of breast; incisional.........................................19101 ....................................$  150.00
Excision of malignant tumor (except 19140),
male or female, one or more lesions ...........................19120 ....................................$  150.00
Mastectomy, partial ...................................................19160 ....................................$  150.00
Mastectomy, simple, complete.....................................19180 ....................................$  300.00
Mastectomy, modified radical, including axillary
lymph nodes, with or without pectoralis minor
muscle, but excluding pectoralis major muscle ............19240 ....................................$  600.00

**DIGESTIVE SYSTEM**

Upper gastrointestinal endoscopy including
esophagus, stomach, and either the duodenum
and/or jejunum as appropriate; diagnostic,
with collection of specimen(s) by brushing or
washing (separate procedure)....................................43235 ....................................$  150.00
Gastrectomy, total; with esophagoenterostomy ...............43620 ....................................$1,000.00
Colectomy, partial; with anastomosis ............................44140 ....................................$  800.00
Proctectomy; complete, combined abdominoperineal,
with colostomy, one or two stages..............................45110 ....................................$1,000.00
Colonoscopy, flexible, proximal to splenic flexure;
diagnostic, with collection of specimen(s) by
brushing or washing, with or without colon
decompression (separate procedure)...........................45378 ....................................$  280.00
Colonoscopy, flexible, proximal to splenic flexure;
with removal of tumor(s), polyp(s), or other
lesion(s) by snare technique......................................45385 ....................................$  500.00

**EXTERNAL GENITALIA**
**FEMALE**

Vulvectomy, simple; partial..........................................56620 ....................................$  400.00
Vulvectomy, simple; complete.......................................56625 ....................................$  550.00
Vulvectomy, radical, partial..........................................56630 ....................................$  800.00
Vulvectomy, radical, complete, with
inguinofemoral, iliac, and pelvic
lymphadenectomy.....................................................56640 ....................................$1,000.00

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 21 of 45   PageID #: 77

## SCHEDULE OF SURICAL PROCEDURES (CONT)

| SURGICAL PROCEDURES | PROCEDURE CODE FOR 1964 C.R.V.S | PER UNIT OF SURGERY COVERAGE |
|---|---|---|

**EXTERNAL GENITALIA (CONT)**
**MALE**
Biopsy of testis, needle (separate procedure)......................................54500 ........................................ $   20.00
Orchiectomy, radical, for tumor; inguinal approach ..........................54530 ........................................ $ 400.00

**LIVER**
Biopsy of liver; percutaneous needle.................................................47000 ........................................ $   50.00
Biopsy of liver, wedge (separate procedure) .....................................47100 ........................................ $ 400.00
Hepatectomy, resection of liver; partial lobectomy ...........................47120 ........................................ $ 800.00

**LUNG**
Bronchoscopy; with biopsy................................................................31625 ........................................ $ 200.00
Biopsy, lung or mediastinum, percutaneous needle...........................32405 ........................................ $   50.00
Removal of lung, total pneumonectomy .............................................32440 ........................................ $1,000.00

**MUSCULOSKELETAL**
Biopsy, bone, trocar or needle; superficial
    (e.g., ilium, sternum, spinous process, ribs)................................20220 ........................................ $   50.00
Excision of tumor, soft tissue of neck or thorax;
    deep, subfascial, intramuscular...................................................21556 ........................................ $ 100.00
Laminectomy for biopsy/excision of intraspinal
    neoplasm; extradural, cervical.....................................................63275 ........................................ $1,000.00

**PROSTATE**
Transurethral resection of prostate, including
    control of postoperative bleeding, complete
    (vasectomy, meatotomy, cystourethroscopy,
    urethral calibration and/or dilation, and
    internal urethrotomy are included)................................................52601 ........................................ $ 800.00
Prostatectomy, perineal, subtotal (including control
    of postoperative bleeding, vasectomy, meatotomy,
    urethral calibration and/or dilation, and internal
    urethrotomy) ................................................................................55801 ........................................ $ 800.00
Prostatectomy, retropubic radical, with or without
    nerve sparing; with bilateral pelvic lymphaden-
    ectomy, including external iliac, hypogastric
    and obturator nodes .....................................................................55845 ........................................ $1,300.00

**SKIN**
Biopsy of skin, subcutaneous tissue and/or
    mucous membrane (including simple closure),
    unless otherwise listed (separate procedure);
    single lesion (pathology report required)....................................11100 ........................................ $   30.00
Biopsy of skin, subcutaneous tissue and/or
    mucous membrane (including simple closure),
    unless otherwise listed (separate procedure);
    each separate/additional lesion (pathology
    report required)...........................................................................11101 ........................................ $   15.00

| SURGICAL PROCEDURE | PROCEDURE CODE FOR 1964 C.R.V.S | PER UNIT OF SURGERY COVERAGE |
|---|---|---|

**SKIN (CONT)**

Excision, malignant lesion, trunk, arms, or legs;
lesion diameter 0.5 cm. or less.................................11600 ....................................$ 60.00

Excision, malignant lesion, trunk, arms, or legs;
lesion diameter 2.1 to 3.0 cm.............................11603 ....................................$ 120.00

Excision, malignant lesion, scalp, neck, hands,
feet, genitalia; lesion diameter 0.5 cm. or less.............................11620 ....................................$ 100.00

Excision, malignant lesion, scalp, neck, hands,
feet, genitalia; lesion diameter 2.1 to 3.0 cm. .............................11623 ....................................$ 250.00

Excision, malignant lesion, face, ears, eyelids,
nose, lips; lesion diameter 0.5 cm. or less.................................11640 ....................................$ 150.00

Excision, malignant lesion, face, ears, eyelids,
nose, lips; lesion diameter 2.1 to 3.0 cm.................................11643 ....................................$ 300.00

Chemosurgery (Mohs' micrographic technique);
first state, fresh tissue technique, including
removal of all gross tumor, surgical excision of
tissue specimens, mapping, color coding of
specimens, and microscopic examination of
specimens by the surgeon, of up to 5 specimens.......................17304 ....................................$ 200.00

**UTERUS**

Colposcopy (vaginoscopy); with biopsy(s) of the
cervix and/or endocervical curettage .................................57454 ....................................$ 60.00

Endometrial and/or endocervical sampling
(biopsy), without cervical dilation, any method
(separate procedure) .................................58100 ....................................$ 30.00

Dilation and curettage, diagnostic and/or
therapeutic (nonobstetrical) .................................58120 ....................................$ 150.00

Total abdominal hysterectomy (corpus and cervix),
with or without removal of tube(s), with or without
removal of ovary(s).................................58150 ....................................$ 600.00

Radical abdominal hysterectomy, with bilateral
total pelvic lymphadenectomy and para-aortic lymph
node sampling (biopsy), with or without removal of
tubes(s), with or without removal of ovary(s).........................58210 ....................................$1,000.00

Vaginal hysterectomy .................................58260 ....................................$ 600.00

**VASCULAR INJECTION PROCEDURES**

Placement of central venous catheter for therapeutic
reasons (subclavian, jugular, or other vein) (e.g., for
hyperalimentation, hemodialysis, or chemotherapy);
percutaneous, over age 2 .................................36489 ....................................$ 100.00

Insertion of implantable venous access port, with
or without subcutaneous reservoir .................................36533 ....................................$ 400.00

Removal of implantable venous access port
and/or subcutaneous reservoir .................................36535 ....................................$ 150.00

## CONTINUITY OF COVERAGE

**IF THE EMPLOYEE IS NOT IN ACTIVE EMPLOYMENT WHEN THE EMPLOYER CHANGES GROUP INSURANCE CARRIERS TO AMERICAN HERITAGE LIFE**

When the plan becomes effective, we provide coverage for an employee if:
1. he or she is not in active employment due as a result of cancer; and
2. he or she was covered by the prior group policy when it terminated; and
3. the prior group policy provided coverage for cancer.

Such coverage is subject to payment of premium.

Benefits under this provision will be limited to the amount that would have been paid by the prior carrier. We reduce benefits by any amount for which the prior carrier is liable.

**IF AN EMPLOYEE HAS A LOSS DUE TO A PRE-EXISTING CONDITION AND THE EMPLOYER CHANGES GROUP INSURANCE CARRIERS TO AMERICAN HERITAGE LIFE**

We may pay benefits if an employee's loss results from a pre-existing condition if the employee was:
1. in active employment and insured under this plan on its effective date; and
2. insured by the prior group policy when it terminated.

The prior group policy's coverage must be substantially similar to this plan and have been in effect within 60 days of this plan's effective date in order for this provision to apply.

In order to receive benefits the employee must satisfy the pre-existing condition provision under:
1. the American Heritage Life plan; or
2. the prior carrier's plan, if benefits would have been paid had that policy remained in force.

If such employee does not satisfy item 1 or 2 above, we will not pay any benefits.

If such employee satisfies either item 1 or 2, we will determine our payments according to the American Heritage Life policy provisions.

**(This space intentionally left blank.)**

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 24 of 45   PageID #: 80

# CLAIMS INFORMATION

## NOTICE OF CLAIM

We encourage the employee to notify us of claim as soon as possible so that a claim decision can be made in a timely manner. Written notice of claim must be given to us within 20 days after the occurrence or commencement of any loss covered by this policy, or as soon as is reasonably possible. Notice given by or on behalf of the employee or the beneficiary to us at 1776 American Heritage Life Drive, Jacksonville, Florida 32224-6688, or to any authorized agent of ours, with the employee's name and certificate number, is notice to us.

The claim form is available from the employer, or he or she can request a claim form from us. If he does not receive the form from American Heritage Life within 15 days of his request, he may send American Heritage Life written proof of claim without waiting for the form.

## FILING A CLAIM

The employee and the employer must fill out their own sections of the claim form and then give it to the attending physician. The physician should fill out his or her section of the form and send it directly to American Heritage Life.

## PROOF OF CLAIM

If this policy provides for periodic payment of a continuing loss, written proof of loss must be furnished to us within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given to us within 90 days after each loss. If it is not possible to give us written proof in the time required, we will not reduce or deny any claim for this reason, as long as the proof is filed as soon as reasonably possible. In any event, the proof required must be given to us no later than 1 year from the time specified unless the employee is legally incapacitated.

## PHYSICAL EXAMINATION AND AUTOPSY

We have the right, at our own expense, to have any covered person examined by a physician of our choosing, as often as may be reasonably required while a claim is pending. We may have an autopsy performed during the period of contestability, where it is not forbidden by law.

## PAYMENT OF CLAIMS

After receiving written proof of loss, we pay all benefits then due under this policy. Benefits for any other loss covered by this policy are paid as soon as we receive proper written proof.

We will make payments to the employee unless he or she assigns such payments. Any amounts unpaid at the employee's death may, at our option, be paid either to the named beneficiary or to the employee's estate.

If benefits are payable to the employee's estate or a beneficiary who cannot execute a valid release, we can pay benefits up to $1,000, to someone related to the employee or beneficiary by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

## ASSIGNMENT

An assignment of the coverage under this policy is not binding on us, unless:

1. it is a written request; and
2. it is received and recorded by us at our home office.

We are not responsible for the validity of any assignment. An assignment is subject to any payment we make or other action we take before we record the assignment. An assignment may not change the owner or beneficiary.

## OVERPAID CLAIM

We have the right to recover any overpayments due to:

1. fraud; or
2. any error we make in processing a claim.

The employee must reimburse us in full. We will work with such employee to develop a reasonable method of repayment if he is financially unable to repay us in a lump sum.

We will not recover more money than the employee was paid.

Case 2:13-cv-00126-JRG-DHI   Document 1-2   Filed 05/02/13   Page 25 of 45   PageID #: 81

# CLAIMS INFORMATION

**CLAIM REVIEW**

If a claim is denied, we will give written notice of:

1. the reason for denial; and
2. the policy provision that relates to the denial; and
3. the employee's right to ask for a review of his or her claim; and
4. any additional information that might allow us to change our decision.

The employee may, upon written request, read any reports that are not confidential. For a small fee, we will make copies of those reports for the employee's use.

**APPEALS PROCEDURE**

Prior to filing any lawsuit and within 60 days after denial of a claim, the employee or his or her beneficiary must appeal any denial of benefits under the policy by making a written request for review of the denial.

**(This space intentionally left blank.)**

# GLOSSARY

**Active Employment.** Means the employee is working for the employer for earnings that are paid regularly and that he or she is performing the material and substantial duties of his or her regular occupation. The employee must be working at least the minimum number of hours as described under Eligible Class(es) in each plan.

The employee's work site must be:

1. the employer's usual place of business; or
2. an alternative work site at the direction of the employer; or
3. a location to which the job requires such employee to travel.

Normal vacation is considered active employment. Temporary and seasonal workers are excluded from coverage.

**Ambulatory Surgical Center.** A licensed surgical center consisting of: an operating room; facilities for the administration of general anesthesia; and a post surgery recovery room that the patient is admitted to and discharged from within the same working day. This includes an ambulatory surgical center that is a part of a hospital.

**Autologous Bone Marrow Transplant.** A procedure in which bone marrow is removed from a patient, stored, and then given back to the patient following intensive treatment.

**Bone Marrow Transplant.** A procedure to replace bone marrow destroyed by treatment with high doses of anticancer drugs or radiation. A transplant may be autologous (the person's own marrow saved before treatment), allogeneic (marrow donated by someone else), or syngeneic (marrow donated by an identical twin).

**Cancer.** The disease manifested by the presence of a malignancy characterized by the uncontrolled and abnormal growth and spread of malignant cells in any part of the body. This includes: Hodgkin's Disease; leukemia; lymphoma; carcinoma; sarcoma; or malignant tumor. It does not include other conditions which may be considered precancerous, such as: leukoplakia; actinic keratosis; carcinoid; hyperplasia; polycythemia; nonmalignant melanoma; moles; or similar diseases or lesions.

**Common Carrier.** Only the following: commercial airlines or; passenger trains; or intercity buslines. It does not include taxis; or intracity buslines; or private charter planes.

**Continuous Hospital Confinement.** One continuous confinement or two or more hospital confinements not separated by more than 30 days. If there are more than 30 days between confinements, they are considered separate confinements.

**Continuous Hospital Intensive Care Unit Confinement.** One continuous confinement or two or more hospital intensive care unit confinements not separated by more than 30 days. If there are more than 30 days between confinements, they are considered separate confinements.

**Covered Person.** Any of the following:

1. any eligible family member (including the employee) named in the enrollment form or evidence of insurability form and acceptable for coverage by us; or
2. any eligible family member added by endorsement after the effective date; or
3. a newborn child.

**Date of Diagnosis.** The earliest of the date of: tentative diagnosis; or clinical diagnosis; or the day the tissue specimen, culture(s) and/or titer(s) are taken, upon which the positive or tentative diagnosis of cancer or specified disease is made.

**Employee.** Means a person who is a citizen or resident of the United States or one of its territories in active employment with the employer.

**Employer.** Means the individual, company or corporation where the employee is in active employment, and includes any division, subsidiary, or affiliated company named in the policy.

**Evidence of Insurability.** Means a statement of the employee's medical history which we will use to determine if he or she is approved for coverage. Evidence of insurability will be provided at the employee's expense.

**Extended Care Facility.** A licensed nursing facility under the direction of a physician which provides continuous skilled nursing service under the supervision of a graduate registered nurse (R.N.) and maintains daily medical records on each patient. It does not include any institution, or part thereof, used primarily as a place for the aged, drug addicts, alcoholics, or rest.

# GLOSSARY (CONT)

**Freestanding Hospice Care Center.** A center which is not a hospital, a wing, or section of a hospital, providing 24 hour a day care for the terminally ill under the medical direction of a physician.

**Grace Period.** Means the period of time following the premium due date during which premium payment may be made.

**Hospital.** A legally operated institution with established facilities (either on its premises or available to the hospital on a contractual, pre-arranged basis and under the supervision of a staff of one or more duly licensed physicians), for the care and treatment of sick and injured persons for diagnosis, surgery, and 24 hour nursing service. Hospital does not include:
1. any institution which is mainly a rest home, nursing home, convalescent home, or home for the aged; or
2. any institution which is mainly for the care and treatment of alcoholics or drug addicts, or mental or nervous disorders.

**Hospital Intensive Care Unit.** A hospital area of special care including cardiac or coronary care units, which at the time of admission is separate and apart from the surgical recovery room, other rooms, beds, or wards normally used for patient confinement. In addition the unit must provide the following:
1. 24 hour continuous nursing care attended by nurses assigned to the unit on a full time basis; and
2. direction and/or supervision by a full time physician director or a standing "intensive care" committee of the medical staff; and.
3. special medical apparatus used to treat the critically ill.

**Initial Enrollment Period.** Means one of the following periods during which the employee may first apply in writing for coverage under this policy:
1. if the employee is eligible for coverage on the policy effective date, a period before the policy effective date as set by American Heritage Life and the employer; or
2. if the employee becomes eligible for coverage after the policy effective date, the period ending 31 days after the date he or she is first eligible to apply for coverage.

**Insured.** The person accepted for coverage by us who has completed and signed the enrollment form or evidence of insurability and whose name appears on the Certificate Specification Page.

**Intoxication.** A temporary state of being as determined by the laws of the state in which the loss occurred.

**Material and Substantial Duties.** Means duties that:
1. are normally required for the performance of the employee's regular occupation; and
2. cannot be reasonably omitted or modified, except that if the employee is required to work on average in excess of 40 hours per week, American Heritage Life will consider the employee able to perform that requirement if he or she is working or has the capacity to work 40 hours per week.

**Nurse.** Any one of the following who is not a member of the covered person's immediate family or employed by the hospital where the covered person is confined:
1. licensed practical nurse (L.P.N.); or
2. licensed vocational nurse (L.V.N.); or
3. graduate registered nurse (R.N.).

**Oncologist.** A legally licensed Doctor of Medicine certified to practice in the field of Oncology.

**Pathologist.** A legally licensed Doctor of Medicine certified by the American Board of Pathology to practice Pathological Anatomy.

**Payable Claim.** Means a claim for which we are liable under the terms of this policy.

**Physician.** Means:
1. a person performing tasks that are within the limits of his or her medical license; and
2. a person who is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or
3. a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

We will not recognize the employee, his or her spouse, children, parents, or siblings as a physician for a claim.

# GLOSSARY (CONT)

**Plan.** Means a line of coverage under the policy.

**Policyholder.** Means the employer to whom the policy is issued.

**Positive Diagnosis (of cancer).** A diagnosis by a licensed doctor of medicine certified by the American Board of Pathology to practice Pathological Anatomy, or an Osteopathic Pathologist. Diagnosis is based on a microscopic examination of fixed tissue, or preparations from the hemic system (except for skin cancer). We accept clinical diagnosis of cancer as evidence that cancer existed in a covered person when a pathological diagnosis cannot be made, provided medical evidence substantially documents the diagnosis and the covered person received definitive treatment for the cancer.

**Positive Diagnosis (of a specified disease).** A diagnosis by a qualified physician based on generally accepted diagnostic procedures and criteria.

**Pre-Existing Condition.** A disease or physical condition for which medical advice or treatment was received by the covered person during the 12-month period prior to the effective date of the covered person's coverage.

**Radiologist.** One who is licensed to administer X-ray therapy, radium therapy, or radio-active isotopes therapy and is certified by the American Board of Radiology.

**Re-Enrollment Period.** A period of time as set by the employer and us during which the employee may apply, in writing, for coverage under this policy, or change coverage under this policy if he or she is currently enrolled.

**Specified Disease.** Only any one of the following:

(1) Amyotrophic Lateral Sclerosis (Lou Gehrig's Disease)
(2) Muscular Dystrophy
(3) Poliomyelitis
(4) Multiple Sclerosis
(5) Encephalitis
(6) Rabies
(7) Tetanus
(8) Tuberculosis
(9) Osteomyelitis
(10) Diphtheria
(11) Scarlet Fever
(12) Cerebrospinal Meningitis (bacterial)
(13) Brucellosis
(14) Sickle Cell Anemia
(15) Thallasemia
(16) Rocky Mountain Spotted Fever
(17) Legionnaire's Disease (confirmation by culture or sputum)
(18) Addison's Disease
(19) Hansen's Disease
(20) Tularemia
(21) Hepatitis (Chronic B or Chronic C with liver failure or hepatoma)
(22) Typhoid Fever
(23) Myasthenia Gravis
(24) Reye's Syndrome
(25) Primary Sclerosing Cholangitis (Walter Payton's Liver Disease)
(26) Lyme Disease
(27) Systemic Lupus Erythematosus
(28) Cystic Fibrosis
(29) Primary Biliary Cirrhosis

**Stem Cell Transplant.** A method of replacing immature blood and bone marrow cells that were destroyed by cancer treatment. The stem cells are given to the person after treatment to help the bone marrow recover and continue producing healthy blood cells.

**Temporary Layoff or Leave of Absence.** Means the employee is absent from active employment for a period of time that has been agreed to in advance in writing by the employer.

Normal vacation time or any period of disability is not considered a temporary layoff or leave of absence.

**Tentative Diagnosis.** A tentative diagnosis is established based upon dated medical records which indicate a diagnosis of a probable or possible cancer or specified disease.

**We, Us, and Our.** American Heritage Life Insurance Company.

## BREWER AND TERRY, P.C.
### Attorneys at Law
1702 W. Andrew Johnson Highway
P. O. Box 2046
Morristown, TN 37816-2046

GARY E. BREWER
STEVEN W. TERRY
R. DALE DARBY

TELEPHONE (423) 587-2730
TELECOPIER (423) 585-0427

November 19, 2012

FILED
CHANCERY COURT CLERK

MAR 28 2013

TIME 3:35

HAMBLEN COUNTY

Allstate Benefits
Claim Department
1776 American Heritage Life Drive
Jacksonville, FL 32224

Re:   **Mrs. Melissa Tripucka**
      **Policy: 55m2467012**
      **Claim Id: 120067636**

<u>DEMAND FOR COVERAGE UNDER POLICY AND NOTICE OF BAD FAITH</u>
<u>DENIAL OF CLAIM UNDER T.C.A. § 56-7-105</u>

To whom it may concern:

I have been retained by Mrs. Tripucka to represent her in the above-referenced claim. Having reviewed the subject policy, I am 100 percent convinced that there is coverage. Accordingly, we make this <u>demand for payment</u> of all benefits withheld for Tysabri drug treatments that Mrs. Tripucka has received to date but have not been paid under the subject policy. We make further demand for approval of all future Tysabri drug treatments.

### Facts

The Allstate letter dated September 28, 2010, provides that benefits for Mrs. Tripucka's multiple sclerosis would begin on January 1, 2011. **Exhibit 1, 9/28/10 letter.** From January 4, 2011 to December 15, 2011, Mrs. Tripucka received 11 Tysabri (Natalizumab) injections for MS treatment. Each injection cost $4,835.00 to administer for a total cost of $53,185.00 over that period. **Exhibit 2, Itemized Statement: Dr. Sibyl Wray.**

Benefits for these injections were denied and an Appeal Request Form was filed by my client with your company on December 30, 2011. **Exhibit 3, Claim Form.** Allstate denied the claim by letter dated January 14, 2012. **Exhibit 4, 1/14/12 letter.** The letter essentially states that Radiation/Chemotherapy benefits under Section H of the policy (page 9) are not payable because

1

EXHIBIT 2

Tysabri was not being used to destroy or modify cancerous tissue.

## Statement of Issues

The key provision at issue is the second paragraph of Section H, which states in pertinent part:

> We only pay this benefit for cancer or specified disease treatment consisting of...cancericidal chemical substances for the purpose of modification or destruction of cancer or specified disease.

To reduce the provision to its application to specified diseases only, one can remove the following bracketed words:

> We only pay this benefit for [cancer or] specified disease treatment consisting of...cancericidal chemical substances for the purpose of modification or destruction of [cancer or] specified disease.

Once removed, the governing provision reads:

> We only pay this benefit for specified disease treatment consisting of cancericidal chemical substances for the purpose of modification or destruction of specified disease.

**Cancer** and **Specified Disease** are defined under the policy. On page 18, **cancer** is defined, in short, as "a disease manifested by the presence of malignancy...in any part of the body." The definition specifically excludes precancerous conditions. **Specified disease** is defined as a list of 29 separate diseases. Multiple Sclerosis is item 4 on the list. Malignancy is not a defining characteristic of any of the specified diseases.

When the Specified Disease is replaced with Multiple Sclerosis in the provision, you get:

> We only pay this benefit for Multiple Sclerosis treatment consisting of **cancericidal chemical substances** for the purpose of **modification or destruction** of Multiple Sclerosis.

Accordingly, there are two issues to be resolved in order to determine whether Tysabri is covered under the policy:

1. Whether Tysabri is a "cancericidal chemical substance"?
2. Whether Tysabri "modifies or destroys" MS?

2

## Law

The law regarding interpretation of insurance contracts is well-established in this State. Insurance contracts are governed by the same rules of construction as used to interpret other contracts. Travelers Indem. Co. of Am. v. Moore & Associates, Inc., 216 S.W.3d 302, 305-06 (Tenn. 2007). As long as the terms of an insurance contract are unambiguous, the contract will be enforced as written; but ambiguous terms are construed against the drafter. Id.; see also Travelers Ins. Co. v. Aetna Cas. & Sur. Co., 491 S.W.2d 363, 367 (Tenn. 1973) ("The terms and provisions of a policy drafted by the insurance company must be construed strongly in favor of the insured").

Courts are also instructed to construe contracts as a whole and ascertain the parties' intent from the usual, natural, and ordinary meaning of the contractual language. Perkins v. Metro. Gov't of Nashville, M2010-02021-SC-R11CV, 2012 WL 3594236, *9 (Tenn. Aug. 22, 2012). All provisions "should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." Id. In other words, a court will not unnecessarily read contractual provisions as meaningless. Nat'l Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc., 879 A.2d 101, 109 (Md. 2005); c.f.,Tidwell v. Collins, 522 S.W.2d 674, 676 (Tenn. 1975) (courts are required to "construe a statute so that no part will be inoperative, superfluous, void or insignificant").

## Analysis

### Issue 1: Does Tysabri modify or destroy Multiple Sclerosis?

Multiple sclerosis is a potentially debilitating disease in which the body's immune system eats away at the protective sheath that covers the nerves. This interferes with the communication between the brain and the rest of the body. Ultimately, this results in deterioration of the nerves themselves, a process that is not reversible.

Symptoms vary widely, depending on the amount of damage and which nerves are affected. People with severe cases of MS may lose the ability to walk or speak.[1] As therapy for MS, Tysabri injections are used to delay the accumulation of symptoms resulting in disability.[2] Quite obviously, the purpose of Tysabri is to "modify" MS by addressing the symptoms of this

---

[1]     For reference, go to
http://www.mayoclinic.com/health/multiple-sclerosis/DS00188
Accessed on November 2, 2012.

[2]     Prescribing information available at:
http://www.tysabri.com/pdfs/I61061-13_PI.pdf
Accessed on November 2, 2012.

3

incurable disease.

The prescribing information (see FN 2) discusses how Tysabri may modify MS on a pharmacological level. On page 18, the information provides:

> Natalizumab binds to the α4-subunit of α4β1 and α4β7 integrins expressed on the surface of all leukocytes except neutrophils, and inhibits the α4-mediated adhesion of leukocytes to their counter-receptor(s). The receptors for the α4 family of integrins include vascular cell adhesion molecule-1 (VCAM-1), which is expressed on activated vascular endothelium, and mucosal addressin cell adhesion molecule-1 (MAdCAM-1) present on vascular endothelial cells of the gastrointestinal tract. Disruption of these molecular interactions prevents transmigration of leukocytes across the endothelium into inflamed parenchymal tissue. *In vitro*, anti-α4-integrin antibodies also block α4-mediated cell binding to ligands such as osteopontin and an alternatively spliced domain of fibronectin, connecting segment-1 (CS-1). *In vivo*, natalizumab may further act to inhibit the interaction of α4-expressing leukocytes with their ligand(s) in the extracellular matrix and on parenchymal cells, thereby inhibiting further recruitment and inflammatory activity of activated immune cells.
>
> ...
>
> In multiple sclerosis, lesions are believed to occur when activated inflammatory cells, including T-lymphocytes, cross the blood-brain barrier (BBB). Leukocyte migration across the BBB involves interaction between adhesion molecules on inflammatory cells and their counter-receptors present on endothelial cells of the vessel wall. The clinical effect of natalizumab in multiple sclerosis may be secondary to blockade of the molecular interaction of α4β1-integrin expressed by inflammatory cells with VCAM-1 on vascular endothelial cells, and with CS-1 and/or osteopontin expressed by parenchymal cells in the brain. Data from an experimental autoimmune encephalitis animal model of multiple sclerosis demonstrate reduction of leukocyte migration into brain parenchyma and reduction of plaque formation detected by magnetic resonance imaging (MRI) following repeated administration of natalizumab. The clinical significance of these animal data is unknown.

Tysabri modifies MS.

4

**Issue 2: Is Tysabri a Cancericidal Chemical Substance?**

My research shows that Tysabri is a monoclonal antibody that, when administered, affects the actions of the body's immune system by targeting and destroying certain cells in the body.[3]

When used in cancer treatments, "monoclonal antibodies can be directed to attach to certain parts of a cancer cell. In this way, the antibody marks the cancer cell and makes it easier for the immune system to find."[4]

According to one dictionary, cancericidal means "of or pertaining to a chemical or process that can destroy malignant cells."[5] Viewed in this way, Tysabri easily falls into the definition of a "cancericidal chemical substance" since it belongs to a class of drugs that destroys cancer cells.

Tysabri is a cancericidal chemical substance.

## Why Allstates' Interpretation is Wrong

In the January 14, 2012, letter (Exhibit 4), Allstate claims that the policy provides only for chemotherapy, radiation therapy, and immunotherapy only when used for the modification or destruction of cancerous tissue. However, such interpretation falls easily into the category of a "forced construction that renders the policy ineffective." Demontbreun v. CNA Ins. Companies, 822 S.W.2d 619, 621 (Tenn. Ct. App. 1991).

Section H does not say that it covers only therapies that are used to destroy or modify cancerous tissues. Certainly, such a provision could have easily stated that it covered therapies used only "for the purpose of destroying cancerous tissues." But the policy does not say as such; rather, it *includes* the words "specified diseases". Should such words be considered as unnecessary and meaningless verbage?

---

[3]   For reference, go to
http://www.emedicinehealth.com/drug-natalizumab/article_em.htm
http://www.drugs.com/tysabri.html
        Accessed on November 2, 2012.

[4]   For reference, go to
        http://www.mayoclinic.com/health/monoclonal-antibody/CA00082
        Accessed on November 2, 2012.

[5]   Definition of "cancericidal" taken from the following link:
        http://www.thefreedictionary.com/cancericidal
        Accessed on November 2, 2012.

5

The courts countenance that all words in a contract should be given proper significance, but if Allstate's construction were to be adopted, *only* cancer treatments would be subject to coverage under section H. Allstate says that Section H only covers therapies that modify or destroy cancerous tissues; however, **no Specified Disease (such as MS, Rocky Mountain Spotted Fever, Rabies, and Lyme Disease) involves the diagnosis of cancerous tissue.** Consequently, Allstates' interpretation of Section H impermissibly renders the words "Specified Disease(s)" utterly meaningless, even though Allstate, who drafted the policy, specifically mentions the term three times in Section H.

Allstate asserts further that section H only applies to chemotherapy and radiation therapy. While the first paragraph of section H does say "we pay actual charges, up to the limit stated below" for certain therapies, this paragraph refers only to the monetary limits of coverage. That is to say, "we are only going to pay you up to a certain amount according to this benefit schedule." The second paragraph, on the other hand, provides the substantive limitations, which, as discussed above, provides benefits for Specified Diseases like MS so long as those diseases are being treated with a cancericidal chemical substance.

A fair construction of Section H that gives effect to all words relating to coverage for MS is as follows:

> We only pay this benefit for Multiple Sclerosis treatment consisting of **cancericidal chemical substances** for the purpose of **modification or destruction** of Multiple Sclerosis.

### Conclusion

As I have shown, Tysabri is a cancericidal chemical substance administered intravenously to people on an outpatient basis for the purpose of modifying the deleterious effects of MS. It is therefore covered under the policy. Allstate's interpretation of Section H is simply too restrictive and renders it completely useless for people with Specified Diseases like MS. Accordingly, we demand approval of any and all future Tysabri treatments and make further demand for immediate payment of all past benefits wrongfully denied.

If within 60 days Allstate persists in refusing to honor Mrs. Tripucka's claim for coverage under the policy, I will file suit on behalf of Mrs. Tripuka under the terms of the policy and will in addition file suit for bad faith refusal to pay pursuant to T.C.A. § 56-7-105.

Sincerely,

R. Dale Darby
Enclosures

6



**Allstate**
Workplace Division



Mr. Paul J. Tripucka
977 E Brentwood Dr
Morristown TN 37814

September 28, 2010

**Re: Group Voluntary Cancer Plan 55-M2467012**
      **Claim # 102638065**
      **Claimant: Melissa Tripucka**

Dear Mr. Tripucka:

We are writing to you in regards to your request for benefits on behalf of your spouse, Michelle Tripucka, under your GVCP2 Group Voluntary Cancer Plan with our Company.

We have been conducting our routine pre-existing investigation to determine eligibility for benefits under your coverage. Part of this process included reviewing your claim submission with supporting medical records as well as the terms of your policy. This information has been reviewed and documents a condition which is prior to your effective date of coverage, January 01, 2010.

The Glossary of terms in your policy defines a pre-existing condition as follows:

> **Pre-Existing Condition.** "A disease or physical condition for which medical advice or treatment was received by the covered person during the 6 month period prior to the effective date of the covered person's coverage."

The Exceptions and Limitations in your policy read as follows in reference to a pre-existing condition:

> **Pre-Existing Condition Limitation.** "We do not pay for any loss due to a pre-existing condition as defined during the 12 month period beginning on the date that person became a covered person."

The current request for benefits is related to a diagnosis of multiple sclerosis.

The attending physician statement completed by Mrs. Tripucka's doctor indicates that she began having symptoms of multiple sclerosis in July 2008 and had her first consultation at Hope Neurology on September 18, 2009. Additionally, office notes included with the claim submission indicates that MRI of the brain and spine conducted in August 2009 diagnosed Mrs. Tripucka with multiple sclerosis and Dr. Jacques recommended treatment with Tysabri.  Seeking a second opinion, Mrs. Tripucka was seen by Hope Neurology September 18, 2009 and given medical advice regarding treatment with other drugs including Avonex and Betaseron.

**American Heritage Life Insurance Company**
1776 American Heritage Life Drive  Jacksonville, FL 32224-6688   Phone 904.992.1776



**Allstate.**

Workplace Division

Mr. Paul Tripucka
Re: Melissa Tripucka
September 28, 2010
Page Two

Accordingly, as medical advice and/or treatment for Mrs. Tripucka's condition was received within the 12 month period (01-01-09 thru 12-31-09) prior to your effective date of your coverage, January 1, 2010, this condition is considered pre-existing per policy guidelines. No benefit will be payable for any service or treatment within 12 months of your policy effective date. Benefits for this condition will only be available for services received on and after January 1, 2011.

**Note:**
If you were covered by another group cancer policy prior to Policy 55-M2467012, please refer to Page 17 in your policy, Continuity of Coverage. If applicable, please submit a copy of your prior group cancer insurance policy that documents coverage substantially similar to your coverage with American Heritage.

We have gathered and reviewed all information we believe was necessary to evaluate your claim. However, if there are facts you would like us to consider which you are not certain we have before us, we encourage you to bring them to our attention. We also reserve the right to make a decision on this claim, and future claims under the Policy, on the basis of any provision in the policy, whether or not identified in this letter.

Please contact our Customer Care Center by calling 1-800-348-4489 if you have any questions or need additional service. You may also visit our website, www.allstateatwork.com.

Sincerely,

Claims Department

**American Heritage Life Insurance Company**
1776 American Heritage Life Drive  Jacksonville, Fl. 32224-6688   Phone 904.992.1776

EXHIBIT
2

Sibyl Wray M.D.                          ACCOUNT: 17078
10810 Parkside Dr.                       DATE: 12/22/2011
Suite G15
Knoxville, TN  37934


GUARANTOR ----------------------     PATIENT ------------------------------

Tripucka,Melissa A                   Tripucka,Melissa A          17078
977 East Brentwood Drive
                                     INSURANCE -------------------------------
Morristown, TN  37814                PRI: Blue Shield-TN-(180150)
                                     SEC: Tysabri Copay Assistance Program


| DATE | VISIT# | TRA CODE | DECRIPTION | REFERENCE | AMOUNT |
|---|---|---|---|---|---|
| | | | TOTAL FOR TRANSACTIONS NOT IN SELECTED DATE RANGE. | | -.00 |
| 01/04/11 | 37952 | J2323 | Inj., Tysabri 300mg | NDC# 59075-0730-15 | 4800.00 |
| 01/04/11 | 37952 | 96372 | Therapeutic Injection | | 35.00 |
| 01/04/11 | 37952 | J3420 | Injection, B-12 | NDC 0517-0130-5 | 16.00 |
| 01/04/11 | 37952 | 96413 | CHEMO, IV INFUSION, 1  HR | | 300.00 |
| 01/21/11 | 37952 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 02/14/11 | 37952 | 1P | Blue Shield-TN-(18015 | Ck 50083367 | -3108.07 |
| 02/14/11 | 37952 | 1A | Blue Shield-TN-(18015 | Adjustment | -2242.93 |
| 02/14/11 | 37952 | COINS | Coinsurance | | 0.00 |
| 02/15/11 | 37952 | INSMSG-* | Blue Shield-TN-(18015 | Insurance Filed | 0.00 |
| 03/22/11 | 37952 | 1P | Blue Shield-TN-(18015 | Ck 50106625 | 3108.07 |
| 03/22/11 | 37952 | 1A | Blue Shield-TN-(18015 | Adjustment | 2242.93 |
| 03/22/11 | 37952 | 1P | Blue Shield-TN-(18015 | Ck 50106625 | -3108.07 |
| 03/22/11 | 37952 | 1A | Blue Shield-TN-(18015 | Adjustment | -1992.93 |
| 05/02/11 | 37952 | K | Check Payment | MS Society 016371 | -50.00 |
| 02/15/11 | 38596 | J2323 | Tysabri #mg | NDC59075073015 | 4800.00 |
| 02/15/11 | 38596 | 96413 | CHEMO, IV INFUSION, 1  HR | | 300.00 |
| 02/15/11 | 38596 | J3420 | Vitamin B12 #mcg | NDC00517013005 | 16.00 |
| 05/02/11 | 38596 | K | Check Payment | MS Society 016371 | -53.50 |
| 06/07/11 | 38596 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 06/15/11 | 38596 | 1P | Blue Shield-TN-(18015 | Ck 50156464 | -3083.85 |
| 06/15/11 | 38596 | 1A | Blue Shield-TN-(18015 | Adjustment | -1982.15 |
| 06/15/11 | 38596 | COINS | Coinsurance | | 0.00 |
| 06/22/11 | 38596 | INSMSG-* | Blue Shield-TN-(18015 | Insurance Filed | 0.00 |
| 07/05/11 | 38596 | INSMSG-# | Tysabri Copay Assista | Insurance Filed | 0.00 |
| 03/16/11 | 39079 | J2323 | Inj., Tysabri 300mg | NDC# 59075-0730-15 | 4800.00 |
| 03/16/11 | 39079 | 96413 | CHEMO, IV INFUSION, 1  HR | | 300.00 |
| 03/16/11 | 39093 | 99215 | OFFICE/OUTPATIENT VIS | IT, EST | 230.00 |
| 04/01/11 | 39079 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 04/01/11 | 39093 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 04/14/11 | 39093 | 1P | Blue Shield-TN-(18015 | Ck 50122235 | -98.08 |
| 04/14/11 | 39093 | 1A | Blue Shield-TN-(18015 | Adjustment | -81.92 |
| 04/14/11 | 39093 | COINS | Coinsurance | | 0.00 |
| 05/02/11 | 39079 | 1P | Blue Shield-TN-(18015 | Ck 50134596 | -3083.54 |
| 05/02/11 | 39079 | 1A | Blue Shield-TN-(18015 | Adjustment | -1966.46 |
| 05/02/11 | 39079 | COINS | Coinsurance | | 0.00 |
| 05/02/11 | 39079 | K | Check Payment | MS Society 016371 | -50.00 |
| 05/03/11 | 39079 | INSMSG-# | Tysabri Copay Assista | Insurance Filed | 0.00 |

```
Sibyl Wray M.D.                          ACCOUNT: 17078
10810 Parkside Dr.                       DATE: 12/22/2011
Suite G15
Knoxville, TN  37934


GUARANTOR ----------------------    PATIENT ---------------------------------

Tripucka,Melissa A                  Tripucka,Melissa A          17078
977 East Brentwood Drive
                                    INSURANCE -----------------------------
Morristown, TN  37814               PRI: Blue Shield-TN-(180150)
                                    SEC: Tysabri Copay Assistance Program


DATE      VISIT# TRA CODE  DECRIPTION            REFERENCE           AMOUNT
-------------------------------------------------------------------------------
05/24/11  39093 TCAPP     Tysabri Assistance    Debit 024774        -40.00
05/26/11  39093 D         Credit Card                               -10.00
04/13/11  39478 D         Credit Card                               -10.00
04/13/11  39478 J2323     Tysabri #mg           NDC59075073015     4800.00
04/13/11  39478 96413     CHEMO, IV INFUSION, 1 HR                  300.00
05/12/11  39478 EMCFILED  Blue Shield-TN-(18015 EMC Insurance Filed   0.00
05/31/11  39478 1P        Blue Shield-TN-(18015 Ck 50152965        -3592.71
05/31/11  39478 1A        Blue Shield-TN-(18015 Adjustment         -1457.29
05/31/11  39478 COPAY     Copay                                       0.00
06/10/11  39478 INSMSG-#  Tysabri Copay Assista Insurance Filed       0.00
06/22/11  39478 INSMSG-#  Tysabri Copay Assista Insurance Filed       0.00
06/28/11  39478 D         Credit Card           Co-pay Assist Prog   -40.00
05/26/11  40135 J2323     Tysabri #mg           NDC59075073015     4800.00
05/26/11  40135 96413     CHEMO, IV INFUSION, 1 HR                  300.00
05/26/11  40135 D         Credit Card                               -10.00
06/20/11  40135 EMCFILED  Blue Shield-TN-(18015 EMC Insurance Filed   0.00
07/11/11  40135 1P        Blue Shield-TN-(18015 Ck 052025519       -3592.71
07/11/11  40135 1A        Blue Shield-TN-(18015 Adjustment         -1457.29
07/11/11  40135 COPAY     Copay                                       0.00
08/01/11  40135 INSMSG-#  Tysabri Copay Assista Insurance Filed       0.00
09/30/11  40135 D         Credit Card           Ty Co-pay Assistanc  -40.00
06/23/11  40535 96413     CHEMO, IV INFUSION, 1 HR                  300.00
06/23/11  40535 J3420     Vitamin B12 #mcg      NDC00517013005       16.00
06/23/11  40946 J2323     Tysabri #mg           NDC59075073015     4800.00
08/03/11  40535 EMCFILED  Blue Shield-TN-(18015 EMC Insurance Filed   0.00
08/10/11  40535 1P        Blue Shield-TN-(18015 Ck 052046561        -125.02
08/10/11  40535 1A        Blue Shield-TN-(18015 Adjustment          -140.98
08/10/11  40535 COPAY     Copay                                       0.00
08/15/11  40946 EMCFILED  Blue Shield-TN-(18015 EMC Insurance Filed   0.00
08/31/11  40946 1P        Blue Shield-TN-(18015 Ck 052059923       -3468.00
08/31/11  40946 1A        Blue Shield-TN-(18015 Adjustment         -1332.00
12/08/11  40535 INSMSG-#  Tysabri Copay Assista Insurance Filed       0.00
07/21/11  40935 99215     OFFICE/OUTPATIENT VIS IT, EST             230.00
07/21/11  40935 D         Credit Card                               -50.00
07/21/11  40947 J2323     Tysabri #mg           NDC59075073015     4800.00
07/21/11  40947 96413     CHEMO, IV INFUSION, 1 HR                  300.00
07/21/11  40947 D         Credit Card                               -10.00
08/15/11  40935 EMCFILED  Blue Shield-TN-(18015 EMC Insurance Filed   0.00
```

```
Sibyl Wray M.D.                    ACCOUNT: 17078
10810 Parkside Dr.                 DATE: 12/22/2011
Suite G15
Knoxville, TN  37934


GUARANTOR -----------------------   PATIENT --------------------------------

Tripucka,Melissa A                  Tripucka,Melissa A        17078
977 East Brentwood Drive
                                    INSURANCE ------------------------------
Morristown, TN  37814               PRI: Blue Shield-TN-(180150)
                                    SEC: Tysabri Copay Assistance Program
```

| DATE | VISIT# | TRA CODE | DECRIPTION | REFERENCE | AMOUNT |
|------|--------|----------|------------|-----------|--------|
| 08/15/11 | 40947 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 08/22/11 | 40935 | 1P | Blue Shield-TN-(18015 | Ck 052055559 | -112.67 |
| 08/22/11 | 40935 | 1A | Blue Shield-TN-(18015 | Adjustment | -67.33 |
| 08/31/11 | 40947 | 1P | Blue Shield-TN-(18015 | Ck 052059923 | -3544.71 |
| 08/31/11 | 40947 | 1A | Blue Shield-TN-(18015 | Adjustment | -1505.29 |
| 08/31/11 | 40947 | COPAY | Copay | | 0.00 |
| 09/12/11 | 40947 | INSMSG-# | Tysabri Copay Assista | Insurance Filed | 0.00 |
| 08/25/11 | 41535 | 96413 | CHEMO, IV INFUSION, 1 | HR | 300.00 |
| 08/25/11 | 41535 | J2323 | Tysabri #mg | NDC59075073015 | 4800.00 |
| 09/22/11 | 41535 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 10/12/11 | 41535 | 1P | Blue Shield-TN-(18015 | Ck 052080176 | -3527.54 |
| 10/12/11 | 41535 | 1A | Blue Shield-TN-(18015 | Adjustment | -1522.46 |
| 10/31/11 | 41535 | INSMSG-# | Tysabri Copay Assista | Insurance Filed | 0.00 |
| 11/14/11 | 41535 | D | Credit Card | Co-pay Assist TCAP | -40.00 |
| 10/11/11 | 42196 | J2323 | Tysabri #mg | NDC59075073015 | 4800.00 |
| 10/11/11 | 42196 | 96413 | CHEMO, IV INFUSION, 1 | HR | 300.00 |
| 10/28/11 | 42196 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 12/12/11 | 42196 | 1P | Blue Shield-TN-(18015 | Ck 052119618 | -3710.54 |
| 12/12/11 | 42196 | 1A | Blue Shield-TN-(18015 | Adjustment | -1339.46 |
| 12/12/11 | 42196 | COPAY | Copay | | 0.00 |
| 12/13/11 | 42196 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 12/15/11 | 42196 | INSMSG-# | Tysabri Copay Assista | Insurance Filed | 0.00 |
| 11/09/11 | 42641 | J2323 | Tysabri #mg | NDC59075073015 | 4800.00 |
| 11/09/11 | 42641 | 96413 | CHEMO, IV INFUSION, 1 | HR | 300.00 |
| 11/09/11 | 42646 | 99215 | OFFICE/OUTPATIENT VIS | IT, EST | 230.00 |
| 11/09/11 | 42646 | 20552 | Trigger Point Injectn | 1 Or 2 Muscles | 100.00 |
| 11/17/11 | 42646 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 11/21/11 | 42641 | EMCFILED | Blue Shield-TN-(18015 | EMC Insurance Filed | 0.00 |
| 11/28/11 | 42646 | 1P | Blue Shield-TN-(18015 | Ck 052117505 | -98.08 |
| 11/28/11 | 42646 | 1A | Blue Shield-TN-(18015 | Adjustment | -112.24 |
| 11/28/11 | 42646 | PAT | Patient Responsible | | 0.00 |
| 12/15/11 | 42646 | D | Credit Card | | -46.61 |
| 12/15/11 | 43234 | J2323 | Tysabri #mg | NDC59075073015 | 4800.00 |
| 12/15/11 | 43234 | J3420 | Vitamin B12 #mcg | NDC00517013005 | 16.00 |
| 12/15/11 | 43234 | 96413 | CHEMO, IV INFUSION, 1 | HR | 300.00 |

```
                                                          --------
                                              TOTAL       10435.57
Transactions from 01/01/2011 - 12/22/2011 are printed
All physicians are represented
All locations are represented
All visits regardless of statement flag are represented
```



**EXHIBIT 3**

12-30-11

# Allstate.
### Benefits

## AMERICAN HERITAGE LIFE INSURANCE COMPANY
1776 AMERICAN HERITAGE LIFE DRIVE
JACKSONVILLE, FLORIDA 32224-6687

*Resent 1-6-12*

## APPEAL REQUEST FORM
*Please use this form to appeal a denial decision.*

Insured's Name __Paul J. Tripucka__    Policy/Certificate No. __55M2467012__

Name of representative pursuing appeal, if different from above __Melissa A. Tripucka__

Mailing Address __977 E. Brentwood Dr.__    Phone No. __423-273-0927 or 423-__

City __Morristown__    State __TN__    Zip Code __37814__    __748-32__

Type of Denial:   ☒ Denied Claim    ☐ Denied Service    ☐ Other

What specific decision are you appealing? __Payment for MS treatments.__

*(Explain what you want our company to pay for)*

Explain why you believe the claim or service should be covered: __Your policy says it covers MS, we have been turned down repeatedly after resending the claims in according to your instructions. We have asked what it covers and noone will tell us what it covers only that our treatment isn't. We have spoken with multiple people @ your company and noone can help us. The HR people @ my work are not helping us either.__

*(Attach additional sheets of paper, if needed.)*

---

> **If you have questions about the appeals process or require assistance to prepare your appeal, you may call American Heritage Life Insurance Company at 1-800-348-4489**

---

> **Please submit this form to:**
> Allstate Benefits
> Allstate Benefits Claim Department
> 1776 American Heritage Life Drive
> Jacksonville, Florida 32224-6687

---

> *Please* make sure to attach everything that shows why you believe Allstate Benefits should cover your claim, including: ☐ **Medical records** ☐ **Supporting documentation** (letter from your doctor, brochures, notes, receipts, etc.) **THANK YOU!** __All information has been sent in and turned down.__

__Melissa A. Tripucka__    __12-30-11__
Signature of insured or authorized representative    Date

---

> **PLEASE SEE AUTHORIZATION AND FRAUD WARNINGS APPLICABLE TO YOUR STATE ON PAGE 2.**

Allstate Benefits is the marketing name for American Heritage Life Insurance Company (home office: Jacksonville, Florida – www.allstateatwork.com). All products are underwritten by American Heritage Life Insurance Company, a wholly-owned subsidiary of The Allstate Corporation (home office: Northbrook, Illinois - allstate.com).

ABJ5068    Page 1 of 3
(5/11)

We only path this benefit for cancer or specified disease treatment consisting of:
1. cancericidal chemical substances for the purpose of modification or destruction of cancer or specified disease; and
2. X-ray radiation; and
3. radium and cesium implants; and
4. cobalt.

The policy does provide a benefit for chemotherapy, radiation therapy and immunotherapy when used for the modification or destruction of cancerous tissue. However, the drug Tysabri is not being used to destroy or modify cancerous tissue.

Therefore, we regret we will be unable to honor your request for benefits. While we certainly understand and are not questioning the course of Mrs. Tripucka's medical treatment, the policy does not contain a provision which would allow benefits for Tysabri drug treatment for Multiple Sclerosis.

We have gathered and reviewed all information we believe was needed to evaluate your claim. However, if there are facts you would like for us to consider which you are not certain we have before us, we encourage you to bring them to our attention. We also reserve the right to make a decision on this claim and future claims under the Policy on the basis of any provision in the policy whether or not identified in this letter.

If you have any questions regarding this information or your policy in general, please do not hesitate to let us know. Our toll free number is 1-800-348-4489.

Sincerely,


Allstate Benefits
Claim Department

 

**American Heritage Life
Insurance Company**
1776 American Heritage Life Drive
Jacksonville, FL 32224

January 14, 2012

Paul J Tripucka
977 E Brentwood Dr
Morristown TN 37814

Re: Mrs. Melissa Tripucka
Policy: 55 m2467012
Claim Id: 120067636

Dear Mr. Tripucka:

We are in receipt of your appeal requesting benefits on behalf of Mrs. Melissa Tripucka for the treatment of Multiple Sclerosis under your GVCC2TX Group Voluntary Cancer and Specified Dread Disease Policy with our Company.

Your Policy is a specific limited loss policy which provides benefit for loss due to cancer or specified diseases as defined and subject to its provisions, exclusions and limitations.

This policy provides a list of services and supplies available for those receiving treatment. The benefits that would be available for a person diagnosed with Multiple Sclerosis are hospital confinement, inpatient drugs and medicine, surgery, second surgical opinion, physician's attendance, private duty nursing services, blood, plasma, and platelets, ambulance, anesthesia, family member lodging and transportation, prosthesis, extended care facility, government or charity hospital, ambulatory surgical center, new or experimental treatment, hospice care, physical or speech therapy, extended benefits, and an at home nursing benefit.

Under the Radiation/Chemotherapy Provision it states, "We pay actual charges, up to the limit stated below for radiation therapy and chemotherapy received by a covered person as part of treatment for cancer or a specified disease. This benefit is limited to the amount shown on page 3A per 12 month period beginning with the first day of benefit under this provision. Administration of radiation therapy or chemotherapy other than by medical personnel in a physician's office or hospital, including medications dispensed by a pump, will be limited to the costs of the drugs only, subject to the maximum amount payable per 12 month period shown on page 3A.

## IN THE CHANCERY COURT FOR HAMBLEN COUNTY, TENNESSEE
## AT MORRISTOWN

PAUL J. TRIPUCKA, as insured under a policy of :
insurance; and his spouse, MELISSA A. TRIPUCKA, :
as a covered dependent under said policy            :
      Plaintiffs, :    NO. 2013-CV-714

v. :

AMERICAN HERITAGE LIFE INSURANCE :
COMPANY, d/b/a Allstate                              ,  :
      Defendants :

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

**TO:**    **American Heritage Life Insurance Company d/b/a Allstate**
**Agent:**      **Commissioner of Insurance for the state of Tennessee**
                 **500 James Robertson Parkway**
                 **Nashville, TN 37243-1131**

     You are hereby summoned and required to serve upon   **R. Dale Darby, Esq. plaintiffs'**
**attorney, whose address is 1702 W. Andrew Johnson Hwy., Morristown, TN 37816-2046**, a true
copy of the answer to the Complaint which is herewith served upon you, within 30 days after service of
this summons upon you, exclusive of the day of service. You will file the original with the Court.
     If you fail to do so, judgment by default will be taken against you for the relief demanded in the
Complaint.
     Issued this the 28th day of March , 2013, at 3:35 o'clock P .M.

                                        _Katherine Jones-Terry_

                    Clerk_____
                       _Michele Nase_
                    Deputy Clerk

(This Summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedures.)
    Received this the _____ day of _____, 2013, _____
                                      Deputy Sheriff

## RETURN ON SERVICE OF SUMMONS
     I hereby certify and return that on the _____ day of _____, 2013, I served this
summons together with the Complaint as follows:_____

_____

_____

failed to serve this summons within 30 days after its issuance because_____

_____

_____

_____

### NOTICE
(1)    The original answer shall be filed with the Clerk of the Court simultaneously with service on Plaintiffs' attorney.
(2)    All original exhibits filed with the anser shall be filed with the Clerk of the Court.

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

April 5, 2013

BY _____

American Heritage Life Ins Company
800 S. Gay Street, Ste 2021, % C T Corp.
Knoxville, TN 37929-9710
NAIC # 60534

Certified Mail
Return Receipt Requested
7012 1010 0002 9224 5002
Cashier # 8402

Re:    Paul J. And Melissa A. Tripucka  V.  American Heritage Life Ins Company

       Docket # 2013-CV-114

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 4, 2013, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Chancery Court Clerk
    Hamblen County
    511 West 2Nd North Street
    Morristown, Tn 37814